**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**DEBRA RENEE BRETHAUR,**

      **Plaintiff,**

                                **Civil Action 2:18-cv-203**
                                **Chief Judge Edmund A. Sargus, Jr.**
      **v.**                        **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**


## REPORT AND RECOMMENDATION

Plaintiff, Debra Renee Brethauer ("Plaintiff"), brings this action under 42 U.S.C. §

405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner")

denying her application for social security disability insurance benefits.   This matter is before

the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of

Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 17), and the

administrative record (ECF No. 6).   For the reasons that follow, it is **RECOMMENDED** that

the Court **REVERSE** the Commissioner of Social Security's nondisability finding and

**REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

### I.      BACKGROUND

Plaintiff protectively filed her application for Title II Social Security Benefits on

October 20, 2014, alleging that she has been disabled since October 9, 2014, due to a Sarcoidosis

in lungs /bones /liver, Ankylosing Spondylitis, Premature Ventricular contractions, Type II

Diabetes, enlarged heart, anxiety, depression, fibromyalgia, cataracts in both eyes, and

hypertension.  (ECF No. 6 at PAGEID #231-39, 281.)  On March 19, 2013, following initial administrative denials of Plaintiff's applications, a hearing was held before Administrative Law Judge Joseph A. Rose (the "ALJ").  (*Id*. at PAGEID #106-27.)

At the hearing, Plaintiff, represented by counsel, appeared and testified.  Plaintiff testified that she last worked in October 2014 after two years of "struggling really bad."  (*Id*. at PAGEID #112, 115.)  She testified that she could not concentrate, and because she was in management, she could step away to rest, but these breaks resulted in her working "from sunup to sundown."  (*Id*. at #PAGEID 115.)  Her pain management physician took her off work until June 2015 with the hope that with some time off, she would be able to get better and get back to work but she "never improved."  (*Id*. at PAGEID #116.)  Plaintiff described constant, sharp, achy pain in her hip, back, ribs, shoulders, and neck as well as "bone-crushing spasms" that radiated through her spine and felt like "a vine around my spine that just spasms and crushes it" that occurred two to three times per month.  (*Id*. at PAGEID #117.)  Plaintiff also testified to experiencing headaches every day which she described as "mild."  Her migraines have gotten "better" and she only experienced one migraine per week due to new medication prescribed by the Cleveland Clinic.  (*Id*. at PAGEID #118.)  When asked about her "spells," Plaintiff stated that they were becoming more frequent.  At the time of the hearing, she was experiencing one a month.  In 2015 and 2016, the spells were every two to three months.  (*Id.*)  She described one example as she had begun slurring her speech and could not talk as she went to throw something away in a restaurant, and she stumbled.  (*Id.* at PAGEID #118-19.)  Plaintiff testified that she no longer drove because of the spells and her doctors "said I need to stop until they figure it out . . . because it's too dangerous."  (*Id.* at PAGEID #119.)

Plaintiff also testified to undergoing a surgical procedure on her right shoulder and a carpal tunnel release in her right hand. (*Id.* at PAGEID #119-20.) She testified to her right upper extremity being "weak" and her right hand still went numb about three times a week. (*Id.*) She has not had carpel tunnel release on her left hand because the right-side surgery did not work. (*Id.*) Plaintiff has "trouble opening things, like bottles of pop, cans . . ." and dropped things easily. (*Id.* at PAGEID #121.) She stated there were days when her hands ached, and she could not type or text. (*Id.*)

When discussing her medication, Plaintiff testified she was prescribed Morphine for pain, as well as Fentanyl patches, but is "trying to stop" the Fentanyl patches since she suspected it caused her "spells." (*Id.* at PAGEID #121.) She stated she was prescribed Methotrexate for sarcoidosis and hydrocortisone steroids for adrenal insufficiency. (*Id.* at PAGEID #121-22.) She also underwent Remicade infusions every four weeks. (*Id.* at PAGEID #122.)

Plaintiff felt that she could not return to her former job because of her pain and her other problems. She explained that she cannot dependably make it through the day and added that she can no longer concentrate. (*Id*. at PAGEID #123.)

Vocational Expert Irmo D. Marini, (the "VE") also testified at the administrative hearing. (*Id*. at PAGEID 124-26.) The VE classified Plaintiff's past relevant work as a computer systems analyst and an IT manager, both sedentary, skilled positions. (*Id*. at PAGEID 124-25.) The VE testified that a hypothetical individual with Plaintiff's age, education, and vocational profile and the RFC the ALJ ultimately assessed could perform both of Plaintiff's past jobs. (*Id*.)

On July 12, 2017, the ALJ issued a decision finding that Plaintiff was not disabled

within the meaning of the Social Security Act. (*Id*. at PAGEID 84-92.) The ALJ noted that

Plaintiff met the insured status requirements through December 31, 2020. (*Id*. at PAGEID 86.)

At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged

in substantial gainful activity since October 9, 2014, her alleged onset date of disability. (*Id*.)

At step two, the ALJ found that Plaintiff had the severe impairments of sarcoidosis;

ankylosing spondylitis; plantar fasciitis; lumbar spine disorder; migraines; diabetes mellitus type

II; hypothyroidism; hyperadrenalism; carpal tunnel syndrome; bilateral shoulder disorder; sleep

apnea; chronic interstitial cystitis; chronic pain syndrome; and somatic symptom disorder. The

ALJ noted that Plaintiff's seizures are thought to be secondary to her medications and along with

depression and anxiety are considered a nonsevere impairments. (*Id*. at PAGEID 87.) The

---

1. Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

   1. Is the claimant engaged in substantial gainful activity?

   2. Does the claimant suffer from one or more severe impairments?

   3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

   4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

   5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

ALJ determined that Plaintiff does not have an impairment or combination of impairments that

meets or medically equals one of the listed impairments described in 20 C.F.R. Part 404, Subpart

P, Appendix 1. (*Id*. at PAGEID 88.) At step four, the ALJ set forth Plaintiff's residual

functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the [ALJ] finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can frequently climb ramps/stirs and kneel. The [Plaintiff] can occasionally climb ladders/ropes/scaffolds, stoop, crouch, and crawl.

(*Id*. at PAGEID 90.)

In assessing Plaintiff's RFC, the ALJ found "persuasive" the April 2015 opinion of the

state-agency reviewing consultant Linda Hall, M.D., and offered the following additional

rationale:

> Due to her surgical history, she cannot perform work at the medium or heavy level of exertion and has the above postural limitations. However, based upon her examinations at the Cleveland Clinic, she is capable of light work (with the limitations cited) due to her normal gait and normal neurological evaluations. She also achieved 7.8 METS during a stress test, which also comports with the ability to perform light work [citation to record omitted]."

(*Id*. at PAGEID 91.) He acknowledged the existence of other opinions in the record finding

Plaintiff to be disabled but assigned these opinions "little weight" because they contained

opinions on issues reserved to the Commissioner. (*Id.*) The ALJ also discounted Plaintiff's

allegations relating the severity of her symptoms, citing testing records from Cleveland Clinic.

Relying on the VE's testimony, the ALJ concluded that Plaintiff can perform her past

relevant work. (*Id.*) He therefore concluded that Plaintiff was not disabled under the Social

Security Act. (*Id*. at PAGEID 91-92.)

In her Statement of Errors (ECF No. 9), Plaintiff raises three issues. Plaintiff first

contends that the ALJ failed to properly consider and evaluate the opinions of her treating

physicians, Drs. Baughman and Davis.   Plaintiff next posits that the ALJ failed to properly

consider whether her physical impairments met or equaled the appropriate listings.   Last,

Plaintiff contends that the ALJ's failed to sufficiently articulate the bases for his RFC findings.

In her Memorandum in Opposition (ECF No. 17), the Commissioner asserts that

substantial evidence support the ALJ's weighing of the opinion evidence, that Plaintiff's

impairments did not satisfy a listed impairment, and that the ALJ did not commit reversible error

in arriving at his RFC determination.

## II.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the

Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

proper legal standards.'"   *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C.

§ 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . .").   Under this standard, "substantial evidence is

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'"   *Rogers*, 486

F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).

Although the substantial evidence standard is deferential, it is not trivial.   The Court

must "'take into account whatever in the record fairly detracts from [the] weight'" of the

Commissioner's decision.   *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

6

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## III.  ANALYSIS

The undersigned finds that remand is required because the ALJ failed to properly evaluate and weigh the opinions of Plaintiff's treating physicians.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 416.927(c).  The applicable regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis."  20 C.F.R. § 416.927(a)(1).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ."  20 C.F.R. §

416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). If the

treating physician's opinion is "well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence in [the

claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ

must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544

(6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling

weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment
> relationship and the frequency of examination, the nature and extent of the
> treatment relationship, supportability of the opinion, consistency of the opinion
> with the record as a whole, and the specialization of the treating source-in
> determining what weight to give the opinion.

*Id.* Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of

determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20

C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to

make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's

medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x

543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for

the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the
> disposition of their cases," particularly in situations where a claimant knows that
> his physician has deemed him disabled and therefore "might be especially
> bewildered when told by an administrative bureaucracy that she is not, unless some
> reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134
> (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating
> physician rule and permits meaningful review of the ALJ's application of the rule.

*See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Within this contention of error, Plaintiff challenges the ALJ's weighing and consideration of the October 21, 2015 opinion of Dr. Robert P. Baughman, M.D., Plaintiff's pulmonolgist, and also the February 18, 2016 opinion of Dr. Dona Davis, a pain specialist who had treated Plaintiff for more than 4 years.

The *entirety* of the ALJ's analysis regarding these opinions is as follows:

> The undersigned is aware that there are opinions in the record that the claimant is disabled and unable to work (Exs. 36F and 50F). Little weight is given to these opinions. That issue is reserved to the Commissioner (20 CFR 404.1527).

(ECF No. 6-2 at PAGEID #91.)

According to the Commissioner, this explanation was sufficient because the opinions provided only "conclusory statements that Plaintiff was unable to work and was disabled" and "a narrative discussion of Plaintiff's medical treatment history and a recitation of Plaintiff's diagnoses and thus, were not entitled to much weight." (Comm'r's Opp. 10, ECF No. 17.)

9

The Commissioner correctly points out that conclusory statements that a claimant is disabled or unable to work are entitled to no special deference because such issues are reserved for the Commissioner.   *See* 20 C.F.R. § 404.1527(e)(1) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner."); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (finding that the ALJ properly rejected treating physician's conclusory opinion of disability because "20 C.F.R. § 404.1527(e)(1) explicitly states that the conclusion of disability is reserved to the Secretary").

But the undersigned disagrees with the Commissioner's apparent contention that the at-issue opinions offer nothing of substance requiring any additional consideration or discussion beyond the ALJ's conclusory dismissal.   The regulations define "Medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."   20 C.F.R. § 404.1527(a)(1). In his October 2015 opinion, Dr. Baughman opines that Plaintiff experienced "increasing symptoms" and identified those symptoms as "neuropathy-type problems," sarcoid-associated fatigue, and difficulty remaining awake and alert.   (ECF No. 6-8 at PAGEID # 1228-29.)   Dr. Baughman also advised that Plaintiff has been unable to successfully obtain treatment due to recurrent infections, which he opined could be attributable to a "sarcoid in her sinuses."   (*Id*.) In her February 2016 opinion, Dr. Davis acknowledged Plaintiff's diagnoses and noted Plaintiff's symptoms of "constant diffuse pain and fatigue," and noted that her pain had progressively worsened.   (ECF No. 6-9 at PAGEID #1452.)   Dr. Davis further opined that Plaintiff "requires high-dose narcotics just to maintain current function."   (*Id*.)   Because the at-

issue opinions from Drs. Baughman and Davis satisfy the criteria set forth in 20 C.F.R. §

404.1527(a)(1), the undersigned concludes that the ALJ's summary dismissal violated the good-

reason rule.

The *Wilson* Court considered three possible scenarios that could lead the Court to a

finding of harmless error.   378 F.3d at 547.   First, the Court indicated that harmless error

might occur "if a treating source's opinion is so patently deficient that the Commissioner could

not possibly credit it . . . ."   *Id.*   Second, the Court noted that if the ALJ's decision was

"consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating

physician's opinion, and the failure to give reasons for not giving such weight is correspondingly

irrelevant."   *Id.*   Finally, *Wilson* considered the possibility of a scenario "where the

Commissioner has met the goal of § 1527(d)(2)–the provision of the procedural safeguard of

reasons–even though she has not complied with the terms of the regulation."   *Id.*

The ALJ's violation of the good-reason rule was not harmless error.   First, for the

reasons discussed above, the at-issue opinions are not patently deficient.   In addition to offering

their opinions about the nature of Plaintiff's impairments, symptoms, diagnoses and prognosis,

Drs. Baughman and Davis discuss Plaintiff's treatment history, and the record contains their

treatment records.   Second, the undersigned cannot conclude that the ALJ's decision is

consistent with the at-issue opinions as both Drs. Baughman and Davis clearly viewed Plaintiff's

impairments and the symptomatology attributable to these impairments as more severe than the

ALJ.[2]   Finally, the ALJ's decision does not otherwise meet the goals of *Wilson*'s reason giving

---

2 The undersigned also notes that the at-issue opinions noted constant pain and fatigue,
worsening symptoms, difficulty remaining awake and alert, and that Plaintiff required high-dose

requirement.

In summary, the undersigned concludes that the ALJ's failure to properly evaluate and weigh the opinions of Plaintiff's treating physicians warrants remand. Although this finding obviates the need to analyze and resolve Plaintiff's remaining contentions of error, the Commissioner may consider Plaintiff's remaining assignments of error on remand if appropriate.

## IV.     DISPOSITION

Due to the errors outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). The undersigned therefore **RECOMMENDS** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## V.     PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo*

---

narcotics to maintain current function, which is consistent with Plaintiff's testimony that she was disabled in part due to pain, fatigue, and concentration issues. The ALJ's RFC assessment, however, contains no mental limitations, and his opinion and neglects to address Plaintiff's allegations concerning her fatigue, concentration issues, and other potential medication side effects. Instead, the ALJ relies upon a January 2015 opinion, without any consideration of Plaintiff's testimony or the opinions of her treating physicians that her condition progressively worsened and that she began experiencing more symptoms.

determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.   Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.   28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


 /s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE